MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.*
DOWDLE.

4-3455

Opinion delivered May 21, 1934.

*Frederick L. Allen, W. P. Strait* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*E. A. Williams, J. H. Reynolds* and *R. W. Robins,* for appellee.

SMITH, J. This is a suit on an insurance policy to recover disability benefits, and this appeal is from a verdict and judgment in favor of the insured.

The most difficult question in the case is the one of fact, whether the insured was totally and permanently disabled; but in the decision of that question we are required to give the testimony tending to establish disability its highest probative value.

The business of the insured is that of a farm manager, and as such he has charge of a farm owned by himself, another by his wife, and a third by the R. A. Dowdle estate, in which he was interested as executor and as an heir. For his management of this last-named farm he has been paid $600 a year for the past several years. He has complete control of all these places, pays the taxes thereon, prepares the chattel mortgages which the tenants execute, and makes all other contracts relating to the management of these farms. These facts being undisputed, it is insisted that the court should have declared, as a matter of law, that the insured was not totally disabled. The disabilities from which the insured suffers are conceded to be permanent. The insistence is that they are not total.

The testimony on the part of the insured is that prior to 1930 he gave these farms a most active and efficient management, but that since that time he has become less active, so that his management is much less efficient. The contention is that, whereas the insured formerly gave to his duties as farm manager the detailed attention which efficient management required, he is now able to give only supervisory attention, for the reason that his physical disabilities have disqualified him from doing and performing all the duties which his employment require.

The insured has become anemic and has lost much flesh and now weighs only 122 pounds. Formerly he rode horseback to and over his farms. He is now unable to do so, although he does occasionally make short trips on horseback, but it requires much fortitude to do this, and that exercise occasions great pain in the manner hereinafter stated. The proper discharge of his duties requires much walking over the farms, and this he is now unable to do at all.

The insured has a fractured coccyx, and the doctors who have attended him believe this was caused by an injury sustained while riding horseback. It was not questioned by any of the doctors who testified, some on behalf of the insured and others on behalf of the insurer, that this condition caused pain, even in sitting quietly, and much more pain when riding horseback. The insured testified that horseback riding caused excruciating pain; that he rarely rode, and that for all practical purposes he had become unable to ride. It was conceded also that the insured could not remain seated, even at his home, for any length of time without suffering much pain, and to alleviate this condition as far as possible he used a circular rubber pad, filled with air, as a cushion, upon which he sat. He did not carry the air cushion around with him, as it was not convenient to do so, but he used one so constantly at his home that he had worn out two of these cushions and was now using a third.

The testimony shows that the insured has a bad case of fallen arches, and a foot specialist testified that this condition was permanent, and that no brace or arch support could be prepared or worn which would give material relief. It was testified that the anterior metatarsus in each foot had slipped down and out of place, and that this condition caused pain upon walking even for short distances; in fact, is painful if insured stands for any length of time. The insured's feet were exhibited to and were manipulated before the jury, and it is said that the grating of the bones caused by such manipulation not only could be seen but could be heard. It was shown that the tendons had stretched and had permitted the bones to drop down, causing the condition commonly spoken of as fallen arches or flat feet, and that to walk or stand caused pain, which increased in intensity the longer the insured stood or the farther he walked, and became so great that he could not stand for any length of time or walk any considerable distance, although it was admitted that he could, and did, walk about town.

These conditions were aggravated by varicose veins in both legs, the existence of which condition was admit-

ted by all the doctors who testified in the case. The insured's legs would swell and throb if he stood long or walked far, and the insured testified that if he did either a feeling of numbness appeared and his legs became cold, and he would go home and wrap them in blankets to partially relieve the discomfort and pain.

The insured also testified that these complications caused such pain and suffering that he was frequently unable to sleep at night, and caused him to spend much time lying down during the day. He admitted that he went to the bank and other places in the discharge of his duties, but he stated that if he could not be served promptly he was required to sit down until he could be waited on.

Three doctors testified that, through the concurrence of these ailments, the insured was permanently and totally disabled from performing any duties which required him to walk or stand for any considerable period or to ride for any considerable distance, and that he was not able to perform all the duties of a farm manager. One of the doctors was asked to "state whether or not, in your opinion, after the examination you made, he is capable of doing ordinary work of any kind?" and he answered: "That brings you again to the question of his intestinal fortitude or endurance." All the doctors agreed that slight physical effort caused some pain, and their differences all related to the extent to which this pain would disqualify and incapacitate the insured from performing the ordinary duties of his employment.

It is pointed out by the appellant that the policy sued on contained no agreement to compensate the insured for any pain suffered by him. And this is true. But the real question in the case is whether the insured's condition is such that he can perform, and should continue to perform, his work. Insured admitted that he had performed numerous acts relating to his duties, and he stated that this was done because he had to earn a living and felt compelled to do so notwithstanding the pain and suffering occasioned by their performance, but that he had to forego many of the activities essential to the proper discharge of his duties because some of them he

could not perform at all, and that he partially performed such other duties as his necessity and fortitude enabled him to bear.

For instance, it was shown on behalf of appellant that the insured drove to his farm in his car, and that he was able to do this without injury to himself. But the tenants by whom this showing was made testified that the insured would not leave his car, and did not walk about the farm as its proper supervision required that he do, and he had formerly done.

It is argued that the instant case is sufficiently similar to the recent case of *Ætna Life Ins. Co.* v. *Person,* 188 Ark. 864, 67 S. W. (2d) 1007, as to be controlled by it, and that the application of the principles there announced requires the reversal of the judgment here appealed from. It is true that Person, the insured in that case, was a plantation manager, and that the use of a light car enabled him to manage his farms in the usual and customary manner without being required to ride horseback. But the evidence in the instant case is not to the same effect. The evidence in the Person case was summarized in the statement: "But nowhere in the testimony is there any substantial evidence to the effect that appellee's physical condition has prevented him from doing all the acts of his vocation in the usual and customary manner." As appears from what has already been said, there is such testimony in the instant case. Person had an arrested case of tuberculosis, and the testimony was to the effect that his condition had become practically normal. Not so in the instant case. The insured's condition was very abnormal, and all the duties of his employment which he did perform entailed pain and suffering.

The extent and consequences of this condition were submitted to the jury under an instruction given at the request of appellant, reading as follows: "You are instructed that the plaintiff is not entitled to recover merely by showing that he is afflicted with some disease or condition which causes pain. In order to recover under the policy upon which he sues, the plaintiff must show by a preponderance of the evidence that his diseases disable

him to the point where he is unable to perform all of the material and substantial duties of his occupation.''

Appellant requested another instruction which reads as follows: ''If you believe from the evidence that the plaintiff is executor of the R. A. Dowdle estate, and that he can perform some of the material and substantial duties of such executorship, that he is manager of his wife's farm, and that he can perform some of the substantial and material duties of such management, that he is the owner of a farm, and that he can perform some of the material and substantial duties of operating his farm, then the court instructs you that he is not totally disabled as the term is used in the insurance policy, and your verdict should be for the defendant.''

The court gave this instruction after substituting the word ''all'' for the word ''some'' wherever it appears, and this action is assigned as error. This question has been considered so frequently and so recently that it need not be again reviewed. The most recent of these cases is that of *Missouri State Life Ins. Co.* v. *Case, ante* p. 223, where it was said: ''Therefore, to come within the meaning of the contract of indemnity, it is not required that the insured shall be absolutely helpless, but he is totally disabled when the infirmity from which he suffers renders him unable to perform all the substantial and material acts of his business, or the execution of those acts in the usual and customary way.'' (Citing cases.)

Another recent case, citing others, is that of *Missouri State Life Ins. Co.* v. *Brown,* 188 Ark. 1136, 69 S. W. (2d) 1075, which is to the same effect. See also *Equitable Life Assurance Society* v. *Bagley,* 188 Ark. 1009, 69 S. W. (2d) 394; *Missouri State Life Ins. Co.* v. *Johnson,* 186 Ark. 519, 54 S. W. (2d) 407; *Missouri State Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. (2d) 600; *Mutual Benefit Health & Accident Ass'n* v. *Bird,* 185 Ark. 445, 47 S. W. (2d) 812.

In the case of *Standard Acc. Ins. Co.* v. *Bittle,* 36 Fed. (2d) 152, it was held by the Circuit Court of Appeals for the Fifth Circuit (to quote the second headnote) that ''disability, within the meaning of a combined health and

accident insurance policy, is total, if it prevents party from performing acts necessary to prosecution of his business in substantially the usual and customary manner, and does not mean state of absolute helplessness or inability to perform, at peril to health, some of acts required in conduct of business or occupation." See also *Metropolitan Life Ins. Co.* v. *Bovello,* 12 Fed. (2d) 810.

One is ordinarily able to perform the duties of his employment, or he is unable to do so; and the fact that indulgent relatives might continue compensation for partial performance is not the final test of capacity, but is only a circumstance to be considered along with all other testimony. Nor does the law require one to perform duties at the peril of his life or health, nor to perform them if their performance entails pain and suffering which a person of ordinary prudence and fortitude would be unwilling and unable to endure.

Appellant requested an instruction numbered 5, reading as follows: "If you believe from the evidence that the plaintiff can, notwithstanding his illnesses, drive his automobile back and forth between Ozark and Morrilton, can drive his automobile over the plantations which he manages, can sit at his desk and transact his banking business, can walk about the streets of Morrilton and sell cotton, can make rental contracts with the tenants on his own place and other places which he manages, can collect the rents from such tenants, can take chattel mortgages, and that such activities, if any, on his part, will not aggravate his condition or make it imprudent for him to continue such activities, if any, then the court instructs you that the plaintiff is not totally disabled, and your verdict should be for the defendant."

This instruction was properly refused as constituting a charge upon the weight of the testimony (*Holmes* v. *Metropolitan Life Ins. Co.,* 187 Ark. 388, 60 S. W. (2d) 557), and leaves out of account certain duties which the testimony shows the insured would be required to perform to properly discharge his employment, but which he is wholly unable to perform, and takes no account of the extent to which performance might be excused by

reason of the pain and suffering which their performance would entail.

The judgment is affirmed.