NORTH AMERICAN ACCIDENT INSURANCE COMPANY *v.*
BRANSCUM.

4-7794                                           191 S. W. 2d 597

Opinion delivered January 14, 1946.

580

*Buzbee, Harrison & Wright,* for appellant.

*Chas. X. Williams* and *Paul X. Williams,* for appellee.

MILLWEE, J. This is a suit on an accident insurance policy. Appellee sought recovery of $600 in disability and hospital benefits alleged to be due him as the result of an accidental injury sustained on August 16, 1944,

while returning to Booneville, Arkansas, from California on a Rock Island passenger train. Appellant prosecutes this appeal from a verdict and judgment for $300 in favor of appellee.

Section 3 of the policy provides for indemnity payments of $25 per week, not exceeding ten consecutive weeks, in case of accidental injury resulting in total disability of the insured. Section 4 provides for double the amount payable under section 3, where the injury is sustained by insured while riding as a fare-paying passenger in a railroad passenger car, and material damage is caused to such conveyance by reason of the accident. In addition to such weekly indemnity, section 6 of the policy provides for payment of hospital benefits at the rate of $25 per week, not exceeding four consecutive weeks, where confinement in a reputable hospital results from injury causing "immediate total disability and confinement in such hospital."

It is conceded by appellant that there was substantial evidence to go to the jury on the question whether appellee was injured by an accident causing material damage to a railroad passenger car. It is, however, earnestly insisted that there is no testimony of total disability suffered by appellee within the terms of the policy, and this presents the difficult question in the case. In determining that question, we are required to give the evidence tending to establish such disability its highest probative value. Appellee and his physician, Dr. O. Q. Ewing, were the only witnesses in the case.

Appellee is an insurance salesman and testified that he was injured by a sudden jerk of a crowded train near Booneville, Arkansas, while returning to that city from a trip to California. He was standing in the aisle of the passenger car near a group of marines when a sudden jerk of the train caused him to be thrown violently against the edge of a seat. The glass of the car door was broken when one of the marines was thrown against it. Appellee received injuries to his ribs, coccyx and testicles. The day following his injury, appellee went to his physician who taped his side and gave him medicine to relieve pain.

He continued to make trips to the doctor and received shots for the continued pain. When his condition grew progressively worse, he went to a hospital at Searcy and was "in and out" of the hospital from October 4, 1944, until December 19, 1944. He was confined in the hospital from December 16 until December 19, as a result of his injuries. At the time of the trial on April 16, 1945, he was still suffering from his injuries.

The insurance company which employed appellee continued his salary payments of $25 per week, but the greater part of his income was from commissions on policies sold. He had worked a part of the time since his injuries, but had lost $700 or $800 in commissions by reason thereof, and the amount of his commissions did not compare with those earned in the early part of 1944. Riding in a car all day caused him to suffer great pain. In the proof of loss which was introduced in evidence, appellee stated he was totally disabled from August 16, 1944, until October 29, 1944, during which time he gave no attention to the duties pertaining to his business and had not recovered when the statement was made.

Dr. O. Q. Ewing testified that he treated appellee for his injuries in August and September, 1944, and that appellee was still suffering from the injury to his left testicle at the time of the trial. It was his opinion that appellee was unable to work on account of his injuries at the time appellee came to him for treatment, but he thought appellee might be able to do light work at the time of the trial. Appellee had sustained injuries to his coccyx and testicles, and apparently had some "cracked" ribs. Dr. Ewing did not have an X-ray and recommended that appellee go to a hospital for a check of his injuries. In a "statement of attending physicians" furnished appellant, Dr. Ewing stated that appellee was totally disabled from August 16, 1944, until October 29, 1944, and was still disabled at the time the statement was made.

Appellant contends that appellee is not entitled to recover any weekly indemnity because he was not immediately, continuously and wholly disabled and prevented from performing every duty pertaining to any and every

kind of business, labor or occupation as provided in section 3 of the policy. Like most of the policies involved in cases which have reached this court on the question, the definition of the term "total disability" contained in the policy under consideration is such that a literal construction thereof would require a state of absolute helplessness before a claimant could be held to come within its terms. However, the decisions of this court are in accord with the general rule as it is stated in 29 Am. Jur. 872: "The rule prevailing in most jurisdictions is that the 'total disability' contemplated by a sickness or accident insurance policy, or the disability clause of a life insurance policy, does not mean, as its literal construction would require, a state of absolute helplessness, but contemplates rather such a disability as renders the insured unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner."

This rule has been repeatedly approved by this court and is in line with the general trend of authority in most of the states. See Annotations, 24 A. L. R. 203, 37 A. L. R. 151, 41 A. L. R. 1376, 51 A. L. R. 1048, 79 A. L. R. 857 and 98 A. L. R. 789. In the case of *Aetna Life Insurance Co. v. Spencer,* 182 Ark. 496, 32 S. W. 2d 310, Chief Justice HART, speaking for this court, said: "Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business or the execution of them in the usual and customary way. *Industrial Mutual Indemnity Co. v. Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A., N. S., 635, 21 Ann. Cas. 1029; *Brotherhood of Locomotive Firemen & Enginemen v. Aday,* 97 Ark. 425, 134 S. W. 928, 34 L. R. A., N. S. 126; and *Aetna Life Ins. Co. v. Phifer,* 160 Ark. 98, 254 S. W. 335."

Some of the more recent decisions which have reiterated the rule are *Missouri State Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. 2d 600; *Mutual Benefit Health and Accident Ass'n* v. *Bird,* 185 Ark. 445, 47 S. W. 2d 812; *Travelers' Protective Association of America* v. *Stephens,* 185 Ark. 660, 49 S. W. 2d 364; *Missouri State Life Ins. Co.* v. *Johnson,* 186 Ark. 519, 54 S. W. 2d 407; *Mutual Life Insurance Co.* v. *Marsh,* 186 Ark. 861, 56 S. W. 2d 433; *Missouri State Life Ins. Co.* v. *Brown,* 188 Ark. 1136, 69 S. W. 2d 1075; *Equitable Life Assurance Society* v. *Bagley,* 188 Ark. 1009, 69 S. W. 2d 394; *Missouri State Life Ins. Co.* v. *Case,* 189 Ark. 223, 71 S. W. 2d 199; *Mutual Life Ins. Co. of N. Y.* v. *Dowle,* 189 Ark. 296, 71 S. W. 2d 691; *Metropolitan Life Ins. Co.* v. *Weathersby,* 190 Ark. 1050, 82 S. W. 2d 527; *Pacific Mutual Life Ins. Co.* v. *Riffel,* 202 Ark. 94, 149 S. W. 2d 57; *New York Life Insurance Company* v. *Dandridge,* 204 Ark. 1078, 166 S. W. 2d 1030.

Appellant relies upon the case of *Brotherhood of Railroad Trainmen* v. *Drake,* 204 Ark. 964, 165 S. W. 2d 947, and says a clause similar to the one involved in the instant case was strictly construed. In that case the facts were that the insured failed to give notice of his disability within the time prescribed by the policy. Insured was a railroad conductor and continued to perform all his duties and make his regular runs for a period of 18 days following his alleged injury. It was held that he was not disabled within the meaning of the policy and the court said: "It is difficult to understand how a man can be totally and permanently disabled, and yet perform all the material and substantial duties of his work."

We think the evidence was sufficient to warrant a submission of the question to the jury whether appellee was totally disabled for a period which the amount of the verdict reflects could not have exceeded six weeks. It is true, appellee continued to draw a salary, but the bulk of his earnings came from commissions which, according to the testimony, were materially reduced because of his inability to perform the substantial and material acts of of his occupation. In the case of *Mutual Life Insurance Co.* v. *Marsh, supra,* the insured was a traveling salesman

and became wholly disabled by his injuries to pursue his occupation. It was held that he was totally disabled although he was subsequently elected circuit clerk from which office he received a substantial income, where the evidence reflected that he was unable to perform the substantial duties of the office in the usual and customary way and his earnings were thereby reduced.

It is also insisted by appellant that the question of hospital indemnity should not have been submitted to the jury because appellee did not suffer an injury which caused "immediate total disability and confinement in such hospital" as provided in the policy. It is now argued that confinement in the hospital must immediately follow the injury before a recovery could be had under the language of section 6. Appellant's specific objection to the court's instruction on this issue was that, "there is no proof that the injury caused immediate total disability or that he was confined in such hospital, but on the contrary the proof is that plaintiff was not confined in any hospital." It would appear, therefore, that appellant's objection at the trial was that there was no evidence of confinement in a hospital, and not that such confinement was too remote, as it is now contended. It is well settled that all doubtful or ambiguous provisions of an insurance contract are to be resolved against the insurer and in favor of the insured. We think a reasonable construction of the provision is that total disability must immediately follow the injury, while hospital indemnity may be allowed where confinement is essential and follows in a natural sequence as a result of the injuries sustained. The instruction given on the issue of hospital indemnity was in the language of the policy, and no error resulted from the submission of this issue to the jury in the absence of an objection on the point now urged.

The judgment is affirmed.